**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3815-17T2

LENORE N. ZANGRILLI,

     Plaintiff-Respondent,

v.

JASON D. ZANGRILLI,

     Defendant-Appellant.

_____

Argued October 11, 2018 – Decided November 9, 2018

Before Judges Koblitz, Currier and Mayer.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FM-16-1553-11.

Elizabeth D. Burke argued the cause for appellant (Ziegler, Zemsky & Resnick, attorneys; Steven M. Resnick and Ruth Kim, on the briefs).

Tiffany K. Ornedo argued the cause for respondent (Northeast New Jersey Legal Services, attorneys; Tiffany K. Ornedo, of counsel and on the brief).

PER CURIAM

Defendant Jason D. Zangrilli appeals from the March 16, 2018 order denying his application to modify alimony based on changed circumstances as well as the April 13, 2018 order setting his child support based on the income imputed to him in the property settlement agreement (PSA).

The parties were married on August 28, 1994 and had three children: two girls born in 1999 and 2003; and a boy born in 2005. During the marriage, defendant was employed as a creative director of marketing in New York City, earning between $157,000 and $285,000 annually. In December 2011, defendant was involuntarily terminated from his position. He continued to work on a freelance basis, and also operated his own consulting business. Plaintiff did not work throughout the marriage until she obtained employment in 2012 as a client services representative, earning $44,000 annually.

The parties divorced on January 3, 2013, and the judgment of divorce incorporated the terms of a PSA. For purposes of calculating alimony and child support, the PSA imputed an income of $40,000 to plaintiff, and $150,000 to defendant. The PSA provides:

> [I]n the event that the [defendant] secures employment earning an actual gross income of less than $150,000 per year, the [defendant]'s alimony obligation shall not decrease and a gross income of $150,000 shall be imputed to the [defendant] for the purposes of calculating alimony. However, in the event that the

[defendant] secures employment earning an annual gross income exceeding $150,000 per year, the [defendant]'s alimony obligation shall be modified.

The parties further agreed to provide each other with monthly status reports describing job search efforts.

Defendant agreed to pay plaintiff limited duration alimony (LDA) for a period of fifteen years. He agreed to pay $544.87 per week in 2013 and $705.12 per week for the remainder of the fifteen-year term. He agreed to pay child support throughout 2013 in the amount of $314 weekly, and starting in 2014 until emancipation in the amount of $338 weekly.

The parties agreed that a substantial change in circumstances would permit either party to seek modification of alimony provisions pursuant to Lepis v. Lepis, 83 N.J. 139, 151 (1980). The PSA provided:

> The parties acknowledge that they understand that a substantial change of circumstances would permit either party to make an application to a Court of competent jurisdiction to modify the alimony provisions set forth in this agreement. Neither party has waived his or her right to seek a modification of alimony as provided for under the case of Lepis.

On October 3, 2013, defendant was found in violation of litigant's rights for his failure to pay alimony and child support, his outstanding obligations amounting to $19,393.89, as well as for his failure to provide proof of income

 A-3815-17T2

and employment pursuant to the PSA. Defendant was also ordered to pay counsel fees. Defendant sought modification of his support obligations based on his reduced income as well as a reduction in child support based upon the emancipation of his oldest child.

In December 2011, defendant was involuntarily terminated from his position. He said he was unable to secure work in advertising due to the changing landscape of the job market, that his position had been largely outsourced by robotics, and that he is "aged out of the advertising industry" at 47 years old. Defendant obtained employment as a truck driver in October 2017 in part because the job did not require expensive training and offered more stability than the advertising industry. Defendant detailed his financial situation and his efforts to find employment. He also retained an expert who prepared a vocational evaluation and earning capacity assessment. Defendant presented proof of job applications sent between January and June 2017, resumes, and networking efforts. He certified he had sent over 600 job applications between December 2011 and June 2017, and that he had also been operating a consulting business in an effort to meet his support obligations. He had attended seminars and continuing educational opportunities in his field before changing careers. He had changed careers to obtain more reliable

employment. Defendant's anticipated income as a truck driver, which is determined by mile at a rate of forty-two cents per mile, is between $54,600 and $65,520, and he requested that the court impute an income to him of $60,000 for purposes of recalculating his support obligations. Defendant also provided his tax returns from 2012 to 2016 and certified that he had filed for bankruptcy. He had liquidated his savings and began living with his aunt; he had $556.13 in his checking account and $16,500 in credit card debt. Defendant had depleted his retirement accounts, savings accounts, life insurance and stock holdings in order to meet his support obligations.

Defendant provided the following chart in his application, demonstrating his fluctuation in salary:

> 2012: $31,651 (includes unemployment)
> 2013: $75,835 (includes unemployment)
> 2014: $151,247
> 2015: $148,065
> 2016: $37,088
> 2017: $18,420

Defendant's vocational assessment expert opined that defendant:

> has made a successful transition from his prior
> occupation to an unrelated occupation . . . [which] was
> necessitated by his lack of work and earnings in his
> prior occupation as a Creative Art Director, due in
> large measure to technological changes in the
> advertising industry and the limited number of
> opportunities presently and projected for the future in

this field. Although his current occupation is lower paying than his prior creative work, it is steadier work with ample opportunity for sustained employment and wage growth over time.

The expert recommended that defendant continue working as a truck driver.

The motion court issued an order denying defendant's request to reduce his alimony obligations based on substantial change of circumstances, and denying a plenary hearing. The court determined that defendant had not made a prima facie showing of changed circumstances under Lepis, 83 N.J. at 151, noting that:

the court acknowledges that the [d]efendant made efforts in applying to jobs as evidenced by the proofs of applications he submitted. However, this court holds that the proofs are not enough. Defendant is not impaired, and seeks the change in alimony on his inability to secure employment with pay similar to the pay he had prior to divorce . . . . Defendant's limited proofs only show a consistent job search for the period of January to June 2017. There are no proofs of a job search from the time that [d]efendant's purported financial troubles began, nor has [d]efendant provided proofs of a continued job search until the time of filing. Furthermore, [d]efendant has not shown a meaningful effort to improve their status. While [d]efendant has shown [his] application efforts, there are no other efforts taken that would improve [d]efendant's chances and ability to find work or substantially similar work. Lastly, while the [c]ourt acknowledges [d]efendant's application efforts within the area of a "creative director" position, there were no proofs submitted beyond these applications that

[d]efendant applied for similar work arising out of the same experience or skill set.

The motion court did, however, grant defendant's request to reduce his child support obligation based on the emancipation of the eldest child, establishing the support on an annual income of $65,000. After plaintiff's counsel brought this anomaly to the court's attention, the court issued an April 13, 2018 order amending defendant's child support obligation to reflect the imputed income of $150,000.

A motion to modify alimony "rests upon its own particular footing and the appellate court must give due recognition to the wide discretion which our law rightly affords to the trial judges who deal with these matters." Donnelly v. Donnelly, 405 N.J. Super. 117, 127 (App. Div. 2009) (quoting Larbig v. Larbig, 384 N.J. Super. 17, 21 (App. Div. 2006)). Our review of the trial court's discretionary determination regarding defendant's support obligations "is limited to whether the court made findings inconsistent with the evidence or unsupported by the record, or erred as a matter of law." Reese v. Weis, 430 N.J. Super. 552, 572 (App. Div. 2013) (quoting Cesare v. Cesare, 154 N.J. 394, 411 (1998)); see also Storey v. Storey, 373 N.J. Super. 464, 479 (App. Div. 2004). We are, however, less deferential to a determination without a hearing, especially when material facts are at issue. N.J. Div. of Youth &

Family Services v. G.M., 198 N.J. 382, 396 (2009) ("when no hearing takes place, no evidence is admitted, and no findings of fact are made . . . appellate courts need not afford deference to the conclusions of the trial court.").

A "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). We review a motion court's interpretation of the law de novo. Occhifinto v. Olivo Constr. Co. LLC, 221 N.J. 443, 453 (2015) (citing State ex rel. A.B., 219 N.J. 542, 554-55 (2014)).

Courts retain the power to modify support orders entered where there is prima facie evidence of a change in circumstances even where there is a property settlement agreement, as such settlement agreements should be enforced only "to the extent they are just and equitable." Innes v. Innes, 117 N.J. 496, 518 (1990) (quoting Schlemm v. Schlemm, 31 N.J. 557, 581-82 (1960)). In determining whether a downward modification is appropriate, the court may consider the supporting spouse's income and assets. Miller v. Miller, 160 N.J. 408, 422 (1999). A hearing is necessary "to resolve a genuine issue of material fact . . . ." Adler v. Adler, 229 N.J. Super. 496, 500 (App. Div. 1988).

A-3815-17T2

The Lepis standard for modification is two-fold: (1) the party moving for modification bears the burden of making a prima facie showing of changed circumstances; and (2) if a prima facie showing has been made and a genuine dispute exists as to a material issue of fact, the court should then order discovery and a plenary hearing to determine whether the obligor has the ability to pay. Lepis, 83 N.J. at 157-59. A decrease in the supporting spouse's income may constitute a changed circumstance warranting modification of support obligations. Id. at 151.

Defendant demonstrated a prima facie case of a significant good-faith reduction of income, to justify a plenary hearing, from the imputed $150,000 as an advertising art director to the claimed actual income of $60,000 working as a truck driver. He also demonstrated that his assets were completely dissipated. Whether defendant made sufficient efforts to obtain employment in advertising, or another higher-paying field, may be fleshed out at a plenary hearing after discovery is exchanged.

As part of the plenary hearing the court may, if it sees fit, also determine the intent of the parties in entering into a PSA that seems to preclude a reduction of support based on a reduction of income in one paragraph, while describing the parties' agreed-upon right to seek modification of alimony based

on a "significant change of circumstances." In the unlikely event a <u>Lepis</u> waiver was intended, <u>see</u> <u>Morris v. Morris</u>, 263 N.J. Super. 237, 239-40 (App. Div. 1993), the court need not determine whether a sufficient change in circumstances exists to modify support. <u>See also</u> <u>Ordukaya v. Brown</u>, 357 N.J. Super. 231, 236 (App. Div. 2003) ("plaintiff waived any claim for support and agreed to an 'anti-Lepis' provision precluding any claim for change in circumstances supporting a claim for alimony.").

Reversed and remanded for a plenary hearing. We do not retain jurisdiction.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3815-17T2